UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ARTHUR BALDER,

        Plaintiff,

-v.-

JUAN RAMON GARCIA CASTEJON,

and FRANCISCA GALVAN :

        Defendants. :

-----------------------------------------------------------------X

22 Civ. 7973 (RA) (GWG)

**OBJECTIONS**

      These Objections are submitted by Plaintiff in Opposition to Report & Recommendation [Dkt 23] [from now on "R&R"]. Plaintiff presents his Objections as follows:

1) Plaintiff's claims arise from two different objects: the distribution a film "Reality of the Imaginary', for which there was contract in 2014, and 'The Eye of Odin', an editorial venture with 116 illustrations made by Castejon to illustrate Plaintiff's English novel that is not regulated neither mentioned by that contract at all. The drawings were made by Castejon to illustrate a text written y Plaintiff, 'The Eye of Odin', which is an English novel. A) All existing evidence shows that that

venture was not part, is not mentioned, in the contract the R&R references; and B) Castejon sought the US forum because he was illustrating a text in English intended to be distributed in the USA. It is difficult to understand why the R&R directly assumes A) the venture is part of a contract that does not mention it anywhere; and B) Castejon was not seeking the USA forum when the main objective was publish this English work in the USA.

2) Defendant Galvan is not part of, neither is referenced in, the contract of 2014, thus it is not possible to understand why the order Dkt 25 considers them as indivisible part of one and the same thing, which is wrong.

3) Consequently the order wrongly dismisses the tortious interference simply because chooses to understand what is not present in any pleadings, not even from Defendants's own pleadings: that Galvan is not part of the contract referenced met by Plaintiff and Castejon, thus she denying the talent release to deprive Plaintiff of due distribution, when everybody else signs is, simply because Plaintiff insists on terms met verbally less than 12 months before that action, is tortious interference with a contract she is not part of but she is absolutely privy to.

4) The order dismisses out of grounds not presented by Defendants, who have voluntarily appeared in this Court.

5) Another paramount omission is the statute of frauds allegations according to 2021 and the fact that <u>those terms met were to be executed in less than 12 months,</u> a question simply not addressed neither considered at all in Hon. Gorensteins' Dkt. 25, and they are relevant.

6) The R&R, when taking into consideration the long-arm to determine jurisdiction, puts all the weight on the notion that 'all the recordings took place' in Spain to make the film, without considering that 'all the post production' took place in the USA, and post production of a documentary is much longer and takes much more

work than just obtaining footage, and that the distribution was and is set up in and from the USA, with a start point at the MoMA theatres.

7) To accept blindly that Defendant Castejon 'never sought the USA forum', in light of the MoMA premiere as first step for distribution, and then discarding the agreements met in 2021 to be executed in less than 12 months, thus not addressing the implications of the Statute of Frauds, and placing instead all the weight in a coercive manoeuvre that takes place immediately before starting distribution in 2022, once Plaintiff has respected all the terms proposed by Castejon, but only thwarting all the process to impose a unilateral jurisdiction that had NOT been part of the final compensatory terms and conditions of August 2021, is wrong, because it leaves unaddressed the question of the statute of frauds.

8) There is no doubt that Defendants' chose to work with Plaintiff because they wanted New York as a forum for a betterment of their profiting from the best and most important art market in the world.

9) At the root of the 2021 final compensatory agreement is the fact that the film would be distributed in and from the USA by beginning 2022. Castejon had sought the USA forum since the beginning, and affirmed it in 2021, because Plaintiff's distribution of the film only would benefit him, and such plans could only be understood, and were so understood always, as taking place from the USA.

10) Defendants also transacted through Plaintiff to sell artworks in the USA and in New York in previous years, thus seeking the New York forum for obvious reasons in self-interest, yet now coercing Plaintiff into terms not agreed on in 2021 as part of a final agreement that was compensatory on account of what they had done before to Plaintiff, only to scratch, to trample the US jurisdiction, a condition both Plaintiff and Defendant Castejon agreed on in 2021 for a deal

compensatory to be executed in less than 12 months.

11) These elements are being conspicuously omitted in the considerations of the Court.

12) Plaintiff and Castejon agreed on accepting a bilateral clause affirming both jurisdictions for the new compensatory agreement terms of 2021, accepting US and Spain, while all this controversy arises out of Defendants trying to impose the Spain jurisdiction-<u>only</u> once Plaintiff has accepted all the compensatory terms material presented to Plaintiff by Defendant in August 2021. And in order to accomplish it, they go on to thwart distribution without regards to the consequences unless Plaintiff is strong-armed into a clause that was not part of the pact in 2021, a deal to be closed and sealed and executed before 12 months after August 2021.

13) It is surprising to see a US Court allowing this situation to prosper in favour of those who, against the logic of all elements constituent of the allegations [any artist in the world would only dream of a MoMA premiere of a documentary about him, and Plaintiff, his wife and his entire family, evidence shows, 'prayed' for that to happen, and that happened because Plaintiff's endeavours are in the USA], in favour of those who simply deny what is evident in plain sight: that they had sought the USA forum from the beginning, even that as a consequence of the MoMA premiere, Castejon obtained enormous local prestige to propel his career in his local environment.

14) The Court leaves the party who wished bilateral jurisdiction, and more comity of nations' laws, Plaintiff, in the worst position imaginable, to make it easier to those abroad, yet with the privilege of seeking out transaction in New York, to avoid just consideration of bilateral, mutual respect, when in fact they have been seeking constantly since the beginning the advantage of transacting with US and US institutions (MoMA and New york's art market).

15) Defendants have systematically done business in New York, directly and/ or through third parties.

16) N.Y. C.P.L.R. § 302(a)(1) authorizes the exercise of specific personal jurisdiction over a non-resident defendant if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." MoMA theatres start of distribution, Defendants' selling artworks through Plaintiff in New York and to New York clients, even Defendants requesting a recording of world-renown American art-critic Donald Kuspit's for his participation in the Film, recorded in New York, paid for by Castejon with a painting, are elements that leave no doubt as to this matter.

17) Thus Defendants transacted business in New York and this cause of action arises from such business transactions. There is an articulable nexus, and a substantial relationship, between the claim asserted and the actions that occurred in New York.

18) R&R pg 10 footnote 4 shows only that possibly Plaintiff's pleadings have been confusing: Defendant Galvan *tortiously interferes with the relationship between Plaintiff and Castejon, because she is not part of that contract, but interferes with it*. The actions cause extreme and unfair economic pressure on Plaintiff because, accepting those terms in August 2021, he must spend funds to accomplish a new editing of a film that finally cannot be distributed: it is unfair, and it is extreme.

19) The complaint alleges and shows that there has been an on-going contractual relationship with a corporation in the USA since 2013, the contract was negotiated in the USA, and Defendants visited New York in 2015 for the purpose of meeting with parties to the contract regarding the relationship, and new elements of the film were shot in New York in 2015, transactions paid for by Castejon in New York.

20) It is an indisputable fact that Defendants sought out from the beginning a New

York forum. Even in 2021, Plaintiff's distribution would only be possible from New York, and that was only beneficial for Castejon and his family, as it had been since the beginning. Electronic communications provide basis for asserting personal jurisdiction over non-resident defendants because those contacts were used by defendants to project themselves into New York thanks to the distribution of the film. The R&R has not respected the well-known notion that pleadings must be construed in a manner most favourable to Plaintiff in order to allow any deficiencies to be cured, but instead has made quite personal choices to build a shortcut to dismissal.

21) The fact that the claims arise from 2021, does not preclude the Court from looking, and considering for just context, at what matter is relevant in so many years previously to that date. Instead the R&R chooses to follow a shortcut to dismissal, taking for granted many elements that deserved more attention and that lay bare Defendants' hypocrisy as regards to the US and New York jurisdiction.

22) It is regrettable that the R&R leans conspicuously against the US party which, in fact, is the only one that peacefully propounded a just, bilateral jurisdiction for the final form of a contract, a clause which had been already accepted in August 2021, because it was to be executed in less than 12 months, and instead sides with Defendants whose main interest has been taking advantage of USA and New York forum and US art institutions of immense world-prestige, to afterwards thwart distribution in the USA because of such blatant disrespect towards comity of nations in general, and specifically total disregard towards the US laws.

23) The R&R fails to address the information presented regarding the international status of Spanish law and courts, and that the US citizen and US business is being placed as a total disadvantage and that there is an obvious risk of bias,

because the Spanish Courts, in general, are not precisely among the best considered as fair according even to European standards, and here also fails to see, or simply does not want to see, that Defendants' actions are directed to submit Plaintiff and his business, an American company, to a set of laws that deprive him of proper compensation for the harm already suffered within the Spanish Courts, probably the worst in all Europe. Not only the Spanish courts are permanently paralysed by justice workers strikes, this situation would oblige Plaintiff to seek justice in the Courts of Denia, precisely the city where Castejon has a 'museum' [thanks to Plaintiff's film MoMA premiere of 2015 immense publicity, paradoxically], and here the Court considers not that this specific circumstance is brought to Plaintiff simply because he is strong-armed into unilateral jurisdiction against what had been agreed on for a contract to be executed in less than 12 months since August 2021.

24) Plaintiff is now going to file an Amended Complaint encompassing all the facts , and claiming all the harm, since the very beginning in 2013.

Respectfully submitted,

/s/ ARTHUR BALDER

Dated: On May 5, 2023

Cc.           All other Defendants (via Pro Se Intake)