July 17, 2023

**<u>VIA PRO SE INTAKE</u>**
Hon. Chief Justice Laura Taylor Swain, U.S.D.J.
United States District Court
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *Arthur Balder v. Juan Ramon Garcia Castejon, et al*, Case No.: 1:22-cv-07973

Hon. Chief Justice Laura Taylor Swain:

     I am the plaintiff in this action (the "Plaintiff"). This letter is submitted pursuant to I.A of your Honour's Individual Practices.
     This letter is submitted to request a replacement of Magistrate Judge in this case, for a number of reasons briefly listed below. In other words, Plaintiff beseeches this case be assigned to another Magistrate Judge different from the one that has been in charge, Hon. Gabriel W. Gorenstein.

     The main reason is that the Order by Hon. Gorenstein filed today (Doc. 33) incurs in a fact that is strikingly proactive and it takes for granted aspects that pose a disadvantage, material unfairness, to Plaintiff, because it assumes Defendants will want to file a Motion to Dismiss, and grants it directly without taking into consideration that 1) perhaps they do not want to do it in light of the facts alleged (and the most crucial ones of them proven with Exhibits in the Amended Complaint [Doc 29 and its attached 17 Exhibits]) and, more important to us, 2) Hon. Gorenstein grants permission for filing a Motion to Dismiss without considering it himself that perhaps such Motion, in light of the allegations, exhibits and pleadings of the Amended Complaint, will be impossible, or unreasonable; and 3) because for that and other reasons the case deserves a fresh look from someone who has not been extracting conclusions from pleadings that are not the Amended Complaint.

     In other words: **<u>Plaintiff has been deprived of a conference with the judge in which he would have opposed successfully the motion to Dismiss showing the facts alleged in the Amended Complaint.</u>** Hon. Gorenstein has struck that possibility proactively, creating an unfair disadvantage to Plaintiff and directly allowing the Motion to Dismiss to proceed and be filed without considering the *totality* of the new pleadings.
     Most probably Hon. Gorenstein keeps his mind on the previous papers, without considering the Amended Complaint at all.

1

As regards to the Amended Complaint, it shows a certain number of facts that clearly cure the reasonings contained in Hon. Gorenstein's Report and Recommendation granting Motion to Dismiss to Defendants.

The Amended Complaint shows:
1) That Defendant Castejon was making **wire transfers to New York State** to transact with MoMA as regards to the Film's distribution, because, he has declared that in this Court, he is a partner to that business.
2) That both Defendants were present **in New York not for tourism, but for business** (distribution of the Film, meetings with partners of a company in New York, brought goods to New York State, 50 original artworks that form almost the half od the original artworks that illustrate 'The Eye of Odin', a different business between Plaintiff and Defendant Castejon).
3) That Defendant **Castejon brought to New York** many artworks, but particularly, for what is worth, as he and his own attorneys acknowledge in emails (some added as Exhibits), **50 artworks from the venture 'The Eye of Odin'**. ["supplied good directly to New York State"]
4) **The causes of action arise from two different distributions and businesses and their actions in New York State**, 'The Eye of Odin' and the Film, and in both instances we have evidence of Defendant Castejon transacting, first via agents, then directly in person in New York State and with services and goods he supplies into New York State directly, travelling to New York.
5) The ongoing claims are related to those facts, **thus arise from actions of Defendants in New York State** strictly related to the claims.
6) **Defendant Galvan** attended the MoMA's start of distribution. She **promised**, again **in New York State, that she would provide the talent release signed as soon as in a few weeks after, for what is worth, less than 12 months since that promise**, as it was only natural given the MoMA's premiere of the Film. New York's Statute of Frauds applies to her.
7) Defendant Galvan's not providing what she promised simply to, coordinately with her husband, Plaintiff's partner in both business, **simply to coerce Plaintiff into accept other terms, and by doing so thwarting the distribution unilaterally, is a tortious interference with a contract and business expectations**, because she is not part of those contracts between Plaintiff and Defendant Castejon. Hon. Gorenstein's Report and Recommendation does not take into consideration the pleadings, or misread them.

In light of all these elements, and others not mentioned for the sake of brevity, present in the Amended Complaint, that clearly cure the reasons by which Defendants could be granted a Motion to Dismiss based on lack of personal jurisdiction, it is striking that Judge Gorenstein, directly, assumes that a Motion to Dismiss can be filed, a priori, and without taking into consideration that, most

probably, now it will be impossible to grant it because, in his own reasoning from Doc 23 [Report & Recommendation]:

*"As relevant here, N.Y. C.P.L.R. § 302(a)(1) authorizes the exercise of specific personal jurisdiction over a non-resident defendant **if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state"**.*
*With respect to the transaction prong, the Second Circuit has described New York law as follows:*
*New York courts evaluating specific jurisdiction under section 302(a)(1) look to both the language of the statute and the relation between the alleged conduct and the cause of action. To determine the existence of jurisdiction under section 302(a)(1), a court must decide **(1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction**. See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (2006). Courts look to **"the totality of the defendant's activities within the forum,"** Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975) (citation and internal quotation marks omitted), to determine **whether a defendant has "transact[ed] business" in such a way that it constitutes "purposeful activity"** satisfying the first part of the test, see id. at 874; Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18–19, 209 N.E.2d 68, 75, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). As for the second part of the test, "[a] **suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York**." Henderson v. INS, 157 F.3d 106, 123 (2d Cir.1998) (internal quotation marks omitted); accord Deutsche Bank, 7 N.Y.3d at 71, 850 N.E.2d at 1142, 818 N.Y.S.2d at 166–67."* [See Doc. 23, Report & Recommendation by Judge Gorenstein.]

And he adds to describe his reasoning:

*"The Second Circuit has identified four factors to guide the § 302(a)(1) inquiry:*
*(i) whether the defendant has an **on-going contractual relationship with a New York corporation**; (ii) whether the contract was negotiated or executed in New York and **whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;** (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.*

3

*Because the test turns on the totality of the circumstances, "no one factor is dispositive and other factors may be considered." Id*

All those elements are satisfied now by the Amended Complaint, yet it can be understood that Judge Gorenstein's proactive inclinations shows unfairness to Plaintiff, and Plaintiff beseeches this case to be assigned to any other Magistrate Judge for the sake of fairness and to have someone in charge who takes a fresh look at it, taking it as it is: **an Amended Complaint that must be addressed by Defendants according to the same rules that apply to Plaintiff**.

Judge Gorenstein is showing a kind of sympathy towards Defendants whose only reasoning is not to sign standing contracts and terms offered by them because they want to coerce Plaintiff into renouncing to the United States laws and jurisdiction. Sympathy towards such position of Defendants also seems to us concerning, and not impartial to us.

**Plaintiff has demonstrated that he has tried to find amicable solutions with Defendants,** noting dates, and the results of such attempts has been no answer. Plaintiff has also proposed to Judge Gorenstein recently (Letter Doc. 30) that he wishes a conference for settlement, **yet instead he is in a hurry to, granting exceptions to rules, practically invite Defendants to file a Motion to Dismiss without even looking if the Amended Complaint makes such Motion useless.** Judge Gorenstein is not taking a fresh look at this case, on the contrary, it shows it is acting with preconceived notions that show no regard to the Amended Complaint, even if it meets the standards to establish personal jurisdiction that his own Report and Recommendation describe, as quoted before.

For the sake of clarity, Plaintiff wishes to put it very briefly here: the reason why both Defendants decided to break the continuation of a Compensatory Agreement struck in August 2021 that addressed their breaches and torts committed since 2015, which terms were offered by Defendant Castejon to Plaintiff and that Plaintiff accepted, and which acceptation had occasioned to Plaintiff further economic burden since those actions took place in 2021, is, t**ruly and simply: that Plaintiff should accept, against what had been agreed on with both Defendants years ago, that Plaintiff should renounce to a bilateral clause of acceptance of US and Spanish jurisdiction to solve any potential disputes in the future**, and instead they tried to coerce him to accept only, unilaterally, the Spanish jurisdiction.

More simply: Defendants agreed on all terms they themselves had proposed, but in the last minute they decided to coerce Plaintiff into accepting unilateral jurisdiction of Spanish laws. It must be noted: the pact, what had been agreed on, and what Plaintiff was willing to sign, is that *both* jurisdictions, US and Spain, were recognised as valid. **Plaintiff was prone to comity and mutual respect, it**

4

**is Defendants who acting in bad faith deprive Plaintiff of distribution simply because they want unilateral submission to the Spanish jurisdiction.** And this also seems to awake the sympathy of Judge Gorenstein—not the US citizen, who simply wished to affirm *both* jurisdictions, but the Defendants, who want to coerce Plaintiff into the Spanish *one,* or else they coordinate in bad faith to thwart the distribution indefinitely. For Plaintiff, this is concerning.

**It is also important that the Amended Complaint demonstrates that Defendants, additionally, receive a privileged treatment from local institutions in Denia,** Spain, its City Hall and the political party in power in it since 2016 there, their judiciary district, and that this poses a clear risk for Plaintiff that, if he were to claim anything there, no due process would take place. Again, all has been duly explained in the Amended Complaint. P**laintiff's right under the Fourteenth Amendment are at risk of being trampled.**
The Courts of Denia depend on the City Hall for budget and many other ties.
**Defendant's Castejon attorney** facing Plaintiff's claims between 2016 and 2019 was **Oscar Mengual Gomis, who at the same time was and is a publicly elected official who was diverting public funds to create, with City Hall's funds, the Museum Joan Castejón. A clear conflict of interest that even within Spanish standards is untenable, because it is corrupted.** It was this attorney-politician-in-chrge who told Plaintiff that he should not sue Castejon [in Spain], because the judiciary district would be Denia's Courts, and there they had 'many friends, from funcionarios to judges, who are also members of our party, and they depend on us [the City Hall]'.
It seems that this does not pose a clear danger of lack of due process in the eyes of Judge Gorenstein if Plaintiff should try to seek 'justice' in the Courts of Denia.

**Defendants** detest United States' First Amendment and United States' courts and due process as much as they detest the Spanish Transparency Law that allows the public to track, because it offers publicly available information, that her only daughter has been for many years being paid with public funds from the City Hall out of 'projects' finger appointed by her father's political influencers and friends, yet they **detest the US laws and justice system as much as they craved, loved New York's Museum of Modern Art, and the Plaintiff's capacity to make a Film in New York good enough to start distribution there**, **in order to validate Defendant Castejon's career as an artist on an international level, and did anything in their hands since the beginning to transact with New York State and important institutions, such as MoMA**, as briefly described before.
That's why Defendants are role models of hypocrisy and bias against the United States in general and New York in particular trying to impose by coercion unilateral jurisdiction in Spain for their own clear advantage due to political

5

influences, and thus Judge Goreenstein actions as regards to this case seem to us concerning.

In fact, **there is nothing more concerning for a citizen than feeling that justice is not being exercised in absolute and plain-sight impartiality**, with equal application of same criterions to all parties.

In addition to that, Plaintiff, reminds the Court the Objections he filed (Doc. 26] to the Report and Recommendation (Doc. 23), by which Hon. Gorenstein granted a motion to dismiss on grounds not mentioned at all in any of Defendants' pleadings.

Plaintiff, however, is open to have a settlement conference with Your Honor, if Defendants finally decide to agree on it, and if Your Honor makes it possible.


We deeply appreciate your time and consideration in this matter.

      Respectfully Submitted,


      /s/ Arthur Balder



 Cc. All other Parties (via Pro Se Intake).